IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DENNIS SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. H-03-5700 |
| | § | |
| PERFORMANCE FOOD GROUP, INC. | § § § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

The Court's Order of July 21, 2005 is hereby **VACATED** and replaced with the following.

Defendant filed a Motion for Summary Judgment (Docket Entry No. 21) on November 15, 2004. Plaintiff did not respond to this Motion until March 21, 2005, two days before a motion hearing was to be held in this case. After the hearing, the Court gave both parties ten days to point out areas in the record that supported their arguments. Neither party did so. For the reasons that follow, Defendant's Motion is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

**I. BACKGROUND**

Plaintiff filed this lawsuit on December 15, 2003 and made the following claims for relief: discrimination under Title VII and 42 U.S.C. § 1981, Title VII retaliation, constructive discharge, interference with his rights under the Family and Medical Leave

1

Act ("FMLA"), FMLA retaliation, intentional infliction of emotional distress, and negligent supervision and training.

Plaintiff worked for Defendant from May of 2000[1] until July 29, 2002. Defendant is a statewide distributor of food products; it sells and delivers food to restaurants and other establishments. Defendant has satellite offices throughout Texas, with its central warehouse located in Temple. Delivery trucks are loaded from the Temple location. Plaintiff was hired as a delivery driver based out of Houston. The job required unloading contents from the trailer. Plaintiff was an at-will employee.

After two to three months, Plaintiff began working as a shuttle driver. Shuttle drivers take empty trucks to Temple and return with loaded trailers. Shuttle drivers are periodically asked to fill in for delivery drivers. The physical requirements for the driver position are set forth in the employee handbook under Physical Demand Requirements. As set forth in the handbook, all drivers must be able to lift 100 pounds.

For a short period of time after Plaintiff began working as a shuttle driver, Plaintiff also had an extra duty which required him to drive his empty trailer from Houston to Conroe, Texas to pick up milk products at Borden's and transport them back. This was called back-haul duty. Once Plaintiff arrived at Temple, he would resume his usual duty. All drivers are required to be back by 5:00 a.m., regardless of whether they are given back-haul duty.

Plaintiff's supervisor, Mr. Genz, noticed that Plaintiff returned late several times after doing back-haul duty, so Mr. Genz assigned the duty to someone else. Plaintiff estimates that this happened in March or April of 2001. After the duty was assigned to someone else, Mr. Genz noticed that the new driver arrived late a lot less frequently.

---

[1] Defendant says that Plaintiff began working for Defendant on June 1, 2000.

For a time during late 2000 and part of 2001, Plaintiff was also assigned double shifts on Fridays. Then Mr. Genz rearranged the schedule so that no one did double shifts. Plaintiff acknowledged that this was the case in his deposition. From that point onwards, double shifts were assigned only when someone was unable to work on a day he was scheduled.

For a time during late 2000 and early 2001, Defendant also required Temple employees to attach pictures of themselves to food cargo as it was packed. One day, two of the pictures were altered. One was a photo of an African-American employee (not Plaintiff), which had been altered to make it look like a mug shot. The other was a picture of a Caucasian loader, which was altered to make him look like a homosexual. Plaintiff found this offensive and reported it to Mr. Genz. Mr. Genz says that he held a meeting with the drivers to say that such conduct would not be tolerated. Defendant also says that no other drawing was ever found and the practice of requiring the pictures was discontinued. Plaintiff said in his deposition that he was not satisfied with the way that Mr. Genz addressed Plaintiff's concerns. Plaintiff also complains that Mr. Genz called him a "bitch" on one occasion during the first six months that Plaintiff was employed with Defendant. Plaintiff claims that this comment was racially motivated.

In his deposition, Plaintiff said that he complained to Brad Riedel, the Vice President of Sales, and Kevin Mueller, the Transportation Manager, about incidents that occurred during his employment and what he perceived as changes in his job duties. Plaintiff estimates that he did so in March or April of 2001. Plaintiff never complained to anyone in Human Resources. Plaintiff gave conflicting testimony in his deposition about whether the taking away of his double shifts happened before or after he complained to

Mr. Riedel and Mr. Mueller. Plaintiff finally concluded that it happened after he spoke with them.

Plaintiff went on FMLA leave on May 20, 2002 due to stress and depression. Plaintiff also applied for Short Term Disability Benefits.[2] These benefits are offered by Defendant to provide income to an employee who is unable to perform his or her regular duties due to a non-job-related injury or illness. This is significant because FMLA leave is unpaid, unless an employee has vacation, sick, or holiday time left, in which case that time will be substituted first. Plaintiff stated in his deposition that he took Short Term Disability leave so that he could get paid while he was out on leave. Plaintiff says his problems were due to work-related stress and discrimination; in his claim for Short Term Disability Benefits, however, Plaintiff said that his sickness or injury did not arise out of his employment. If it had, Plaintiff would not have been eligible for Short Term Disability Benefits. To continue to receive these benefits, an employee is required to produce a statement from a health care provider every fourteen days.

The last letter that Defendant received from Plaintiff's doctor stated that Plaintiff was released to return to work on July 17, 2002 without any restrictions. However, when the time came for Plaintiff to return to work, Plaintiff said he was not ready to return to work because he had been unable to retain the recertification of his Department of Transportation card. Plaintiff was told to report to work on July 24 with his recertification card. Defendant says that Plaintiff was unable to return to work until July 25 because he waited until July 23 or 24 to renew his DOT certification.

---

[2] According to company policy, employees on FMLA leave may also be eligible for short-term disability benefits.

According to company policy, all drivers who take Short Term Disability Leave are required to take a physical agilities test prior to returning to work in order to ensure that they meet the requirements of the position.[3] Such a test is not required for those who take FMLA leave only.[4] Plaintiff failed the test because he could lift only 75 pounds. Defendant says that it only employs drivers in the Houston area, and there were no other positions available to Plaintiff at the Houston location. Therefore, Plaintiff was terminated on July 29, 2002.

## II. DISCUSSION

### A. Legal Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (citations omitted). Evidence is construed in the light most favorable to the non-moving party. *Id*. "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l*

---

[3] The employee handbook states that "An associate returning from short-term disability may be denied reinstatement if . . . (3) The associate is no longer able to perform the essential functions of the job and there is no reasonable accommodation that can be made for the associate without undue hardship. The associate must submit to testing by a physician designated by the company if so requested."

[4] The same phrasing is found in the list of reasons that an associate returning from FMLA leave may be denied reinstatement; however, the last sentence is omitted.

*Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citations omitted). This Court may grant summary judgment on a claim if Defendant can show that Plaintiff has failed to establish the existence of any of the essential elements of a claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

*B. Discussion*

<u>1. Title VII and Section 1981 Claims</u>

Plaintiff bases his discrimination claims on the following occurrences:

    1. Releasing him from his back haul duties.

    2. Taking away his double shifts.

    3. Mr. Genz calling him a "bitch."

    4. Altering of the pictures.

    5. Changing his schedule (giving him less desirable truck assignments).

    6. Terminating his employment.

All of these events, except for Plaintiff's termination, are time-barred for Title VII purposes. They are discrete acts that occurred more than 300 days before Plaintiff filed his charge of discrimination.

Plaintiff has also failed to make a *prima facie* case as to the first five because they are not adverse employment actions. Being released from his back-haul duties is not an adverse employment action because, though Plaintiff made some extra money performing the back-haul duty, it was an extra duty, not a part of his regular duties. *Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir. 1998) (saying that being denied overtime is not an adverse employment action). Plaintiff admitted this in his deposition.

6

Similarly, the taking away of Plaintiff's double shifts is not an adverse employment action.[5] The same is true for the changing of Plaintiff's schedule. *Id*.

Plaintiff also has not shown that Mr. Genz's comment was a discriminatory act. Calling Plaintiff a "bitch" does not have any racial connotation. In addition, while the altering of the pictures was in extremely poor taste, the fact that the pictures of both an African-American employee and a Caucasian employee were altered suggests that whichever employees were responsible were not specifically targeting African-American employees or Plaintiff.

As for Plaintiff's argument that he was discriminated against when he was terminated, he similarly cannot make out a *prima facie* case because he cannot show that he was qualified for his position and Defendant stated that it had no other positions to offer Plaintiff at the time. Plaintiff could not meet the physical requirements for his position when he returned from leave; he does not dispute that he could not lift 100 pounds. Rather, Plaintiff counters that another employee, who was Caucasian, went out on leave and was not required to take the physical agilities test when he returned. However, Defendant stated that this employee only took FMLA leave, not Short Term Disability Leave, and is therefore not similarly situated. Plaintiff has presented no evidence to contradict this.

Even if Plaintiff were able to make a prima facie case of discrimination, Defendant has given a legitimate non-discriminatory reason for terminating Plaintiff—namely that he failed the physical agility test—and Plaintiff cannot show pretext. The only evidence Plaintiff has presented that he was discriminated against is his own

---

[5] Plaintiff also admits that the double shift duties were not given to another driver after they were taken away from him, which is another element Plaintiff would be required to make a *prima facie* case of discrimination.

subjective belief, which is not sufficient to survive summary judgment. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (citing cases).

2. Title VII Retaliation

To the extent that Plaintiff claims he was retaliated against, he has not made out a *prima facie* case. First, he cannot claim that he was retaliated against after complaining to Mr. Riedel and Mr. Mueller because any retribution that he may have faced afterwards, short of termination, would not be an adverse employment action. As for his termination, the person who made the decision to terminate Plaintiff, Ms. Mushisky, stated in an affidavit that she did not know about any of the complaints Plaintiff had made to Mr. Riedel and Mr. Mueller when she made the decision to terminate him. Plaintiff has presented no evidence to refute this. This is another element of Plaintiff's *prima facie* case of retaliation that he simply cannot show. *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883-84 (5th Cir. 2003). Therefore, summary judgment is warranted on this claim.

3. Constructive Discharge Claim

Plaintiff also seems to make a constructive discharge claim. He argues that he suffered from stress as a result of the discriminatory environment at his workplace, and that this forced him to take FMLA and Short Term Disability Leave. However, in order to make a constructive discharge claim, Plaintiff must have resigned from his employment, which Plaintiff did not do. Furthermore, even if Plaintiff could make a constructive discharge claim, the evidence he has presented fails to raise an issue of material fact as to whether Defendant made working conditions so intolerable that a reasonable employee would have reacted in the same way. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771 (5th Cir. 2002).

### 4. FMLA Claims

Plaintiff claims both that Defendant violated his substantive rights under the FMLA and that Defendant retaliated against him for exercising his rights under the FMLA. However, Plaintiff's claim boils down to the fact that Defendant fired him after he took FMLA leave. Defendant did not interfere with his right to take FMLA leave because Plaintiff took the leave and was willing to return to work. Therefore, Plaintiff is only making a retaliation claim under the FMLA. *See Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999).

The *McDonnell-Douglas* framework applies to FMLA retaliation claims. To make a *prima facie* case of retaliation under the FMLA Plaintiff must show that: (1) he was protected under the FMLA; (2) he suffered an adverse employment decision; and (3)(a) that he was treated less favorably than an employee who had not requested leave under the FMLA; or (3)(b) the adverse decision was made because he took FMLA leave. *Hunt*, 277 F.3d at 768. Plaintiff cannot show either (3)(a) or (3)(b). He has presented no evidence as to another employee who was treated more favorably who did not request FMLA leave. Plaintiff also has not shown that the decision was made because he took FMLA leave. Plaintiff was terminated because he failed a physical agilities test, which he was required to take because he elected to take Short Term Disability leave. This decision had nothing to do with the fact that Plaintiff took FMLA leave.

Even if Plaintiff could make a *prima facie* case, Defendant has given a legitimate, non-discriminatory reason for Plaintiff's termination—namely that he was no longer qualified for the position—and Plaintiff cannot show pretext. Plaintiff makes numerous

insinuations, but these are not nearly enough to show that the fact that Plaintiff took FMLA leave was a motivating factor in Defendant's decision to terminate him.

First, Plaintiff claims that Defendant's policy requiring employees taking Short Term Disability Leave to submit to a physical agilities test makes no sense. Plaintiff argues that he took the leave because he was under stress and depressed, not because he had any physical ailment. Therefore, the test had nothing to do with the reason he took leave. While such a test may not have been permitted under the FMLA, Plaintiff was required to take the test because he took Short Term Disability leave, not because he took FMLA leave. *See* 29 C.F.R. §§ 825.310 (a)-(c). Furthermore, as Defendant explains, the reason why Defendant requires employees returning from Short Term Disability Leave to take a physical agilities test is because, when an employee takes such leave, he or she certifies that he or she is disabled. However, an employee can take FMLA leave for a reason that has nothing to do with his or her own condition.

Next, Plaintiff seems to question the way the test was administered. Plaintiff claims that the person conducting the test should have known how much Plaintiff had to lift in order to pass the test. However, Plaintiff does not suggest that he could have lifted 100 pounds. In addition, the fact that the person conducting the test did not know what was required in order to pass would seem to belie any argument that Defendant somehow set up Plaintiff to fail the test in retaliation for his decision to take FMLA leave.

Because there is no issue of material fact as to Plaintiff's FMLA retaliation claim, summary judgment is warranted on this claim.

### 5. Intentional Infliction of Emotional Distress

Plaintiff also makes a claim for intentional infliction of emotional distress. The Texas Supreme Court has made clear that "intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). Therefore, as long as another existing statutory or common law remedy is available to Plaintiff for the behavior underlying his intentional infliction of emotional distress claim, Plaintiff's claim fails. Title VII and the FMLA are available to Plaintiff to seek redress for the behavior of which he complains. Whether Plaintiff actually succeeds on these claims is immaterial. *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 448 (Tex. 2004). Therefore, Plaintiff's intentional infliction of emotional distress claim is dismissed.

### 6. Negligent Supervision and Training Claim

Plaintiff's negligent supervision and training claim also fails as a matter of law because it is barred by the exclusive remedy provision of the Texas Workers' Compensation Act. *See* Tex. Lab. Code Ann. § 408.001 (a). "The Workers' Compensation Act provides the exclusive remedy for employees' injuries sustained in the course of their employment, at least if the injuries are compensable under the Act." *Walls Reg'l Hosp. v. Bomar*, 9 S.W.3d 805, 806 (Tex. 1999). Throughout Plaintiff's employment, Defendant carried workers' compensation insurance for its Texas employees. As Plaintiff has not argued that an exception to this general rule should apply, Plaintiff's claim of negligent supervision and training is barred by the Texas Workers' Compensation Act. *See also Ward v. Bechtel Corp.*, 102 F.3d 199, 203-04 (5th Cir. 1997).

### III. CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

SIGNED this 18th day of August, 2005.

 

 

-----------------------------------
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS NOTICE SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**